IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRENT WARREN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  Case No.   20-cv-532-RJD |
| | ) |
| FELIX RODRIGUEZ, | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Felix Rodriguez (Doc. 72). For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**Procedural Background**

Plaintiff Trent Warren, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). More specifically, Plaintiff alleges Defendant Dr. Rodriguez, a psychiatrist, failed to issue Plaintiff an ice permit to address his excessive sweating while he was taking Effexor, although Dr. Rodriguez knew this was a potential side effect. Plaintiff also alleges Dr. Rodriguez discontinued his prescription for Effexor without a weaning period, which caused Plaintiff to suffer side effects and withdrawal symptoms.

Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A and he now proceeds on the following claims:

Count One:    Dr. Rodriguez was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when he failed to provide Plaintiff with his Effexor.

Count Two:    Dr. Rodriguez was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when he failed to provide Plaintiff with an ice permit.

Dr. Rodriguez now moves for summary judgment on both claims (Docs. 72 and 73), asserting he was not deliberately indifferent to Plaintiff's physical or psychiatric needs. Dr. Rodriguez also asserts he never denied Plaintiff an ice permit. Plaintiff, through counsel, timely responded to Defendant's motion (Doc. 78), and Defendant filed a reply (Doc. 79).

**Factual Background**

*Relevant Mental Health Treatment*

Prior to his incarceration, Plaintiff self-reported that he was diagnosed with PTSD, ADHD, affective disorder, impulsive disorder, bipolar disorder, and attachment disorder (Deposition of Trent Warren, Doc. 73-2 at 6; *see* Plaintiff's Medical Records, Doc. 73-1 at 60).

Plaintiff was first incarcerated within the IDOC on March 23, 2017 (Doc. 73-2 at 2). Plaintiff was prescribed various medications upon his incarceration, and in August 2017, Plaintiff was first prescribed Effexor while he was at Menard Correctional Center ("Menard") (Declaration of Felix Rodriguez, M.D., Doc. 73-3 at ¶ 11; *see* Doc. 73-1 at 14, 66). Plaintiff was transferred to Lawrence on June 6, 2018 (*see* Doc. 73-1 at 6). Plaintiff's Offender Health Status Transfer Summary indicated he was currently using an inhaler and was taking Benadryl and Effexor (*see id.*). Plaintiff's current complaint was documented as "asthma" (*see id.*). During a mental health evaluation on June 9, 2018, Plaintiff reported no side effects from taking Benadryl or Effexor (*see* Doc. 73-1 at 91).

On July 23, 2018, Plaintiff was seen by Defendant Dr. Rodriguez for a telepsychiatry visit

(*see* Doc. 73-1 at 93-98).  The medical records indicate that Plaintiff was taking Effexor, which continued to be effective (*see* Doc. 73-1 at 93).  Plaintiff denied anxiety, worry, restlessness, irritability, sweats, and apprehension (*see id.*).  Plaintiff saw Dr. Rodriguez again on September 19, 2018, December 17, 2018, March 13, 2019, April 10, 2019, May 14, 2019, and June 11, 2019 (*see* Doc. 73-1 at 99-104, 106-114, 115-120, 121-126, 127-130, 132-135).  Dr. Rodriguez continued Plaintiff's prescription for Effexor at the time of these appointments (*see id.*).  Plaintiff denied complaints during these appointments with Dr. Rodriguez, complaining only once during his May 14, 2019 appointment of muscle pain in his right thorax that Dr. Rodriguez noted was not a documented side effect of Effexor (Doc. 73-3 at ¶ 16; *see* Doc. 73-1 at 127).  Dr. Rodriguez also prescribed Plaintiff another medication, Remeron, on December 17, 2018, but discontinued the same on April 10, 2019 after Plaintiff complained of excessive somnolence (Doc. 73-3 at ¶ 14; *see* Doc. 73-1 at 112, 123).

      Dr. Rodriguez continued to prescribe Plaintiff Effexor in 2018 and 2019 and submitted the necessary non-formulary request forms for such continuance as Effexor had been removed from the IDOC's formulary medication list in 2018 (Doc. 73-3 at ¶ 9, 12).  Dr. Rodriguez had been notified that Effexor was removed from the formulary medication list due to its increased risk of abuse by patients (Doc. 73-3 at ¶ 10).

      During Mental Health Segregation Rounds on July 3, 2019, it was noted that Plaintiff's "depression meds [were] not working" (*see* Doc. 73-1 at 148).  During a telepsychiatry visit with Dr. Rodriguez shortly thereafter, on July 8, 2019, Plaintiff reported some depression, anhedonia, poor concentration, poor sleep, and poor energy (Doc. 73-3 at ¶ 17; *see* Doc. 73-1 at 143).  Dr. Rodriguez informed Plaintiff of the possibility that his prescription for Effexor would be discontinued because IDOC was phasing Effexor out of its facilities (Doc. 73-3 at ¶ 19; *see* Doc.

73-1 at 143).   Plaintiff indicated he wanted to continue his prescription for Effexor (Doc. 73-3 at ¶ 20; *see* Doc. 73-1 at 143).   As such, Dr. Rodriguez continued the Effexor and also added Remeron again, but at a lower dose than previously prescribed to help Plaintiff with his sleeping issues (Doc. 73-3 at ¶ 21; *see* Doc. 73-1 at 144).

On July 16, 19, 20, and 21, 2019, Plaintiff was not issued his prescribed Effexor because the medication was out of stock (reason #6) (*see* Doc. 73-1 at 51).   Plaintiff saw Dr. Rodriguez on July 29, 2019 for a telepsychiatry appointment wherein Plaintiff indicated he was not receiving his Effexor (Doc. 73-3 at ¶ 22).   Plaintiff also indicated his Remeron was not working and again reported depression, anhedonia, poor concentration, poor energy and poor sleep (*id.* at ¶ 24; *see* Doc. 73-1 at 145).   Per Plaintiff's assertion that the Remeron was not working and his request to discontinue the same, Dr. Rodriguez discontinued Plaintiff's prescription for Remeron (Doc. 73-3 at ¶ 31; *see* Doc. 73-1 at 145-46).   Also on this date, Dr. Rodriguez attests that he advised Plaintiff that his prescription for Effexor would be discontinued and Dr. Rodriguez recommended that Plaintiff titrate down his dose of Effexor to eventual discontinuation (Doc. 73-3 at ¶ 27).   Dr. Rodriguez attests that because Plaintiff verbally refused titrating down the Effexor, Plaintiff's prescription for the same was discontinued (Doc. 73-3 at ¶ 28; *see* Doc. 73-1 at 145).   Dr. Rodriguez contends that on this date he recommended Cymbalta as an alternative medication to Effexor because they are both Serotonin-Norepinephrine Reuptake Inhibitor (SNRI) medications and are in the same class of drug (Doc. 73-3 at ¶ 29).   Dr. Rodriguez asserts that Plaintiff refused to take Cymbalta or any other medication and wanted only to remain on Effexor (*id.* at ¶ 30; *see* Doc. 73-1 at 146).

Plaintiff disputes Dr. Rodriguez's characterization of the July 29, 2019 appointment. Plaintiff contends he advised Dr. Rodriguez on this date that he went for several days without

receiving his Effexor and experienced withdrawal symptoms (Deposition of Plaintiff Trent Warren, Doc. 73-2 at 18). Despite this, Plaintiff asserts Dr. Rodriguez did not offer him the opportunity to titrate down his Effexor; rather, according to Plaintiff, Dr. Rodriguez "cut the medication cold turkey" (*id.* at 16). Plaintiff also testified that Dr. Rodriguez did not offer to prescribe Plaintiff anything else, asserting Dr. Rodriguez did not mention Cymbalta (*id.* at 16). Plaintiff also testified that at some previous appointment with Dr. Rodriguez, "maybe like a month or two before," Dr. Rodriguez told Plaintiff he might need to discontinue Effexor because DOC was going to stop issuing the same due to abuse issues (*id.*). Plaintiff asserts, however, that Dr. Rodriguez was supposed to wean him off the medication and Plaintiff knew other inmates who were being weaned off of Effexor (*id.*). More generally, Plaintiff testified that he disagrees with "a lot" of the medical records reviewed during his deposition because "they are not documenting everything they said" (*id.* at 15).

Plaintiff's first "missed" dose after the discontinuation of Effexor by Dr. Rodriguez was at approximately 8 p.m. on July 29, 2019 (*see* Doc. 73-1 at 51). On July 31, 2019, Mental Health Segregation Rounds records indicate that Plaintiff reported he was "not doing okay," was having "severe PTSD nightmares," and had been "kicked off" his "meds" (*see id.* at 151). On August 1, 2019, it was noted in Plaintiff's Mental Health Master Treatment Plan Update that Plaintiff refused to participate in his treatment planning and mental health plan follow-up session (*see id.* at 153). It was noted in the Mental Health Segregation Rounds on August 7, 2019 that Plaintiff reported he was "alright," and continued to address his PTSD symptoms (*see id.* at 149). Plaintiff also complained that the doctor stopped his "meds", and the mental health professional indicated an email had been sent to Plaintiff's doctor regarding this issue (*see id.*).

Plaintiff next saw Dr. Rodriguez for a telepsychiatry appointment on August 23, 2019

(Doc. 73-3 at ¶ 32; *see* Doc. 73-1 at 157-60).  Plaintiff's Progress Note from this appointment indicated he was feeling "bad," and that Plaintiff reported he was feeling depressed, down, sad, had a lack of energy and motivation, some anger, some passive death wishes, and poor impulse control.  Plaintiff also indicated he was "fine" when he was taking Effexor.  Plaintiff agreed to try Cymbalta and was prescribed the same (*id.*).

*Withdrawal Symptoms*

Plaintiff asserts that approximately twelve hours after he was no longer provided Effexor due to the discontinuation of said prescription by Dr. Rodriguez, he began to experience withdrawal symptoms (Doc. 73-2 at 11).  Plaintiff testified his withdrawal from Effexor caused him to experience profuse sweating, muscle spasms, explosive diarrhea, upset stomach, insomnia, fatigue, homicidal/suicidal thoughts, lightheadedness, high blood pressure, anxiety, hot flashes, and sore throat (*id.* at 12).  Many of these symptoms resolved within ten to fourteen days after Plaintiff's discontinuation of Effexor in July 2019; however, Plaintiff asserts some symptoms, including night terrors, erectile dysfunction, suicidal thoughts, and depression persisted (*id.* at 13). Plaintiff also indicated his "physical symptoms" ceased when he was prescribed his new medication about "two months after" his Effexor prescription was discontinued (*id.* at 13; Doc. 73-4 at 5).

*Ice Permit*

Plaintiff testified that generally, IDOC policy requires that ice be dispersed to inmates once per day during the winter and spring months and twice per day during the summer months (Doc. 73-2 at 7).  If an inmate seeks to receive ice beyond the general IDOC allotment, he must have a medical permit (*id.* at 7).  Plaintiff requested a medical permit for ice "several times," but was never provided the same (*id.*).  Plaintiff testified that he spoke with Dr. Rodriguez regarding an

ice permit, and Dr. Rodriguez advised Plaintiff that it was not his "call" and Plaintiff would need to speak with a medical doctor or nurse practitioner to get an ice permit (*id.*). Plaintiff testified that an ice permit would have helped with his asthma (*id.* at 8).

During Mental Health Segregation Rounds on July 10, 2019, it was noted that Plaintiff requested ice and property (*see* Doc. 73-1 at 148).

## Legal Standards

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### *Eighth Amendment Deliberate Indifference*

The Supreme Court has recognized that "deliberate indifference to serious medical needs

of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference.

*Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

## Discussion

### *Count One – Discontinuation of Effexor*

Plaintiff asserts Defendant Dr. Rodriguez violated the Eighth Amendment when he discontinued Effexor, which caused Plaintiff to suffer withdrawal symptoms.

Dr. Rodriguez asserts he was not deliberately indifferent to Plaintiff's physical or psychiatric needs and provided treatment well-within the appropriate standard of care. Dr. Rodriguez further asserts that Plaintiff did not suffer harm as a result of any of his actions because Plaintiff's allegations regarding physical withdrawal side-effects are not supported and there is no evidence that Plaintiff's alleged symptoms were directly due to the withdrawal of his medication.

In support of his argument, Dr. Rodriguez points to Plaintiff's failure to request additional assistance or medical treatment for his alleged withdrawal symptoms when he was seen by mental health staff on July 31, August 1, and August 7, 2019, and the lack of documentation concerning the purported side effects when Plaintiff saw medical professionals in August 2019. Plaintiff refutes that the medical records relied on by Dr. Rodriguez demonstrate a failure to seek help and assert that Plaintiff did request assistance, citing specifically to Plaintiff's July 21, 2019 report that he was "not doing okay."

As a preliminary matter, the Court finds Defendant did not address whether the withdrawal symptoms Plaintiff complains of constituted a serious medical need. As such, this point is conceded for purposes of summary judgment.

With regard to Dr. Rodriguez's contention that he was not deliberately indifferent to Plaintiff's medical needs, the Court must view the evidence in the light most favorable to Plaintiff. In this vein, it appears there is a genuine dispute of material fact concerning the July 29, 2019 telepsychiatry appointment between Plaintiff and Dr. Rodriguez. More specifically, Plaintiff disputes Dr. Rodriguez's contention that Plaintiff refused to titrate down on the Effexor or begin taking Cymbalta in its place. Indeed, according to Plaintiff, Dr. Rodriguez did not offer either Cymbalta as a replacement for Effexor, or a lower dose of Effexor to effectively wean off of the same. It is undisputed that Plaintiff's prescription for Effexor was discontinued on July 29, 2019.

In viewing the evidence in the light most favorable to Plaintiff, soon after the discontinuation of Effexor, Plaintiff experienced significant withdrawal symptoms that lasted at least ten days. This is sufficient to demonstrate that Plaintiff suffered harm as a result of Dr. Rodriguez's actions. While the Court acknowledges Dr. Rodriguez's contention that said withdrawal symptoms are belied by the medical records (in part because there is no mention of such issues during mental health rounds), such documentation, or lack thereof, is not the type that would allow the Court to make a finding that Plaintiff's testimony is "irrefutably contradicted by documentary evidence," *see Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986); particularly because Plaintiff also testified that he disagreed with "a lot" of the medical records, asserting "they" did not document everything (Doc. 73-2 at 15). While such records relied on by Dr. Rodriguez may cause one to question the veracity of Plaintiff's claims, the weight to attach to the medical records versus Plaintiff's testimony is certainly within the province of the jury and not the undersigned. The Court also notes that Dr. Rodriguez's reliance on *Langston v. Peters*, 100 F.3d 1235 (7th Cir. 1996), is misplaced insofar as Plaintiff's claim is not based on a delay of medical treatment, but the knowing discontinuation of a prescription that caused him physical and

psychological harm.

Dr. Rodriguez also asserts there is no evidence that Plaintiff's alleged withdrawal symptoms were actually due to the discontinuation of his Effexor. In support of this argument, Dr. Rodriguez again asserts there is no documentation of the withdrawal symptoms in the medical records. Dr. Rodriguez also asserts many of the symptoms Plaintiff claims he experienced while withdrawing from Effexor had been documented in the medical records prior to July 29, 2019. Dr. Rodriguez cites specifically to records documenting complaints of erectile dysfunction, migraines, constipation, fatigue, trouble sleeping, light headedness, and high blood pressure. Plaintiff asserts this could be interpreted as evidence that Plaintiff had previously experienced withdrawal symptoms when he missed doses of Effexor. Plaintiff also asserts that his testimony supports a finding that any symptoms he experienced as a side effect of Effexor were exacerbated during the withdrawal period (Doc. 73-2 at 20).

The Court acknowledges that the record, beyond Plaintiff's testimony, is sparse regarding the withdrawal symptoms Plaintiff complains of, and there appears to be some overlap between Plaintiff's complaints both preceding and subsequent to the discontinuation of Plaintiff's Effexor prescription. However, Plaintiff's testimony is competent evidence that must be weighed by a jury against other evidence to resolve disputes of material fact.

Based on the foregoing, there exist genuine factual disputes concerning whether Dr. Rodriguez was deliberately indifferent in discontinuing Plaintiff's Effexor. As such, Dr. Rodriguez's request for summary judgment as to Count One is denied.

*Count Two*

Plaintiff asserts Dr. Rodriguez was deliberately indifferent in failing to provide Plaintiff with an ice permit. Dr. Rodriguez asserts he could not have acted with deliberate indifference

because Plaintiff never asked him for an ice permit and the IDOC already had a policy entitling Plaintiff to ice a certain number of times per day depending on the season.

Plaintiff disagrees with Dr. Rodriguez's contention, asserting his testimony creates a genuine dispute as to whether he asked Dr. Rodriguez for an ice permit.

The Court, even when crediting the evidence in Plaintiff's favor, finds Dr. Rodriguez's failure to issue Plaintiff an ice permit was not deliberate indifference.

To be successful on an Eighth Amendment claim, a plaintiff must show not only that a defendant was deliberately indifferent to a serious medical need, he must also show that the breach caused him to suffer a cognizable legal harm. *Doe v. Welborn*, 110 F.3d 520, 523 (7th Cir. 1997) (citing *Babcock v. White*, 102 F.3d 267, 271 (7th Cir. 1996)). Here, Plaintiff has not set forth any evidence that he suffered a "cognizable legal harm" due to Dr. Rodriguez's alleged refusal to provide him with an ice permit. Without harm, there is no cause of action. Dr. Rodriguez is entitled to summary judgment on Count Two.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendant Felix Rodriguez (Doc. 72) is **GRANTED IN PART AND DENIED IN PART**. The Clerk of Court is directed to enter judgment in favor of Defendant Felix Rodriguez and against Plaintiff Trent Warren on Count Two at the close of this case.

Plaintiff proceeds in this matter on the following claim:

Count One:   Dr. Rodriguez was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when he failed to provide Plaintiff with his Effexor.

**IT IS SO ORDERED.**

**DATED: January 13, 2023**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**
